IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER KUTSICK, | ) | CASE NO. 1:15 CV 2339 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Jennifer A. Kutsick under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 5.

[4] ECF # 6.

[5] ECF # 4.

[6] ECF # 7.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Kutsick who was 43 years old at the time of the administrative hearing,[11] is a high school graduate with some college.[12]  She is married and has one adult son who lives with her.[13]  Her past relevant work history includes employment as a surgical technician from 1999-2000.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Kutsick had the following severe impairments: Chrone's [*sic*] disease, ankylosing spondylitis, fibromyalgia, lumbar facet arthropathy, degenerative disc disease of the lumbar

---

[7] ECF # 11 (Commissioner's brief); ECF # 10 (Kutsick's brief).

[8] ECF # 12 (Commissioner's charts); ECF # 15 at 4. (Kutsick's charts).

[9] ECF # 15 at 1. (Kutsick's fact sheet).

[10] ECF # 17.

[11] ECF # 6, Transcript ("Tr.") at 37.

[12] *Id*. at 38.

[13] *Id*. at 38, 52.

[14] *Id*. at 22, 39.

spine, depressive disorder, bursitis in the shoulders bilaterally, inflammatory arthritis (20

CFR 404.1520(c).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

made the following finding regarding Kutsick's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations.  The claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can occasionally stoop but cannot kneel, crouch, or crawl.  The claimant can frequently, but not constantly, perform fine and gross manipulation (fingering and handling) bilaterally.  She cannot reach overhead with either arm.  She must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.  The claimant can understand, remember, and carry out simple instructions and perform simple, routine tasks (DOT reasoning levels 1-3).  The claimant can perform low stress work defined as work not subjecting her to strict quotas or fast paced high production demands, or work that requires negotiation, arbitration, confrontation, directing the work of others, or being responsible for the safety of others. She can adjust to occasional workplace changes.[16]

The ALJ decided that this residual functional capacity precluded Kutsick from performing

her past relevant work as a surgical technician.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[15] *Id*. at 15.

[16] *Id.* at 18.

[17] *Id.* at 22.

determined that a significant number of jobs existed locally and nationally that Kutsick could perform.[18] The ALJ, therefore, found Kutsick not under a disability.[19]

**B.    Issues on judicial review**

Kutsick asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Kutsick presents the following issues for judicial review:[20]

- Whether the ALJ erred by citing to irrelevant evidence or by misinterpreting the record.

- Whether the ALJ erred by not following mandatory procedures contained in 20 C.F.R §404.1527 regarding identifying, evaluating, and assigning weight to a medical source's opinion.

- Whether the ALJ erred by assigning a residual functional capacity that is not supported by substantial evidence.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[18] *Id*. at 23.

[19] *Id*.

[20] ECF # 10 at 1.

-4-

# Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-5-

survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## B. Application of standards

Although Kutsick sets out three issues for resolution,[24] the essential question at the core of all of them is whether the ALJ erred in giving little weight to the physical functional capacity opinion of Dr. Isam Diab, M.D., Kutsick's treating physician. Kutsick contends that as a consequence of that alleged error the ALJ then erred in formulating the RFC without the limitations described in Dr. Diab's opinion.[25]

The ALJ in his opinion identified Dr. Diab as a treating source, but then assigned little weight to his functional opinion.[26] In that regard, the ALJ first noted the limitations set out in Dr. Diab's opinion:

- cannot walk one city block

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] ECF # 10 at 1.

[25] *Id.* at fn.1. Kutsick states that she does not challenge either the ALJ's findings with respect to her mental limitations, nor the finding that she is restricted to unskilled work, but only how the RFC deals with her physical disabilities in light of Dr. Diab's opinion.

[26] Tr. at 21-22.

-6-

- can sit for only thirty minutes at one time

- can stand or walk for only ten to fifteen minutes

- requires unscheduled breaks every thirty minutes, and

- will miss three or four days of work per month due to various symptoms.[27]

The ALJ then assigned little weight to these limitations:

> I give little weight to this opinion despite the treating relationship between Dr. Diab and the claimant because Dr. Diab's statements are largely inconsistent with the MRI findings of only mild to moderate lumbar impairment, the most recent colonoscopy findings show no active Chron's disease, and the poorly documented nature of the claimant's fibromyalgia, inflammatory arthritis, and shoulder bursitis.  That is, Dr. Diab's opinion appears to rely primarily on the claimant's subjective allegations, as compared to the findings and signs throughout this record that indicate her functioning is greater than she has alleged.[28]

Kutsick's objections to the ALJ's analysis in this instance are that Dr. Diab offered the only opinion based on a direct examination and a year-long treating relationship, and an assertion that his opinion did not primarily rely on the claimant's own subjective allegations, but was consistent with Dr. Diab's observations - such as reduced range of hand motion, reduced grip strength and cramping - as well as with his prescriptions for, or recommendation of, multiple pain therapies.[29] She further contends that the ALJ did not strictly apply the

---

[27] *Id*. (citing record).

[28] *Id*. at 22.

[29] ECF # 10 at 12-13.

factors applicable to determining the weight to be given to a treating source opinion that is not given controlling weight.[30]

I initially address the issue of whether the failure to strictly discuss each of the separate factors for weight assignment constitutes *per se* reversible error. Plainly, it does not. Although I have long believed and often stated that the use by the ALJs of a simple template incorporating all the analytical steps into a unified statement would remove all doubts as to whether all the elements of a weight assignment had been addressed and resolved,[31] my views have not proven to be widely persuasive. Rather, as I noted in *Aiello-Zak v. Commissioner of Social Security,*[32] the case authority now holds that the minimally acceptable form of a treating source analysis to be as follows:

> [R]ecent authority has held that so long as an ALJ adequately addresses the factors required by *Gayheart* and articulates good reasons for discounting an opinion of a treating source, the Commissioner's decision will not be upset by a failure to strictly follow the Gayheart template. As the Sixth Circuit recently observed in *Dyer v. Social Security Administration*, the opinion of the treating source may be discounted 'where that opinion was inconsistent with other evidence of record or the assessment relied on subjective symptoms without the support of objective findings." In such situations, the ALJ must give good reasons for the weight given and, in arriving at the decision, must consider the "specific factors" applicable to weighing the opinion of a treating source while supporting the "good reasons" given with the evidence of record. However, as the Sixth Circuit

---

[30] *Id.* at 12.

[31] *See*, *Smith v. Comm'r of Soc. Sec.*, No. 5:13 CV 870, 2014 WL 1944247, at * 8 (N.D. Ohio May 14, 2014).

[32] *Aiello-Zak v. Comm'r of Soc. Sec.* 47 F. Supp. 3d 550 (N.D. Ohio 2014).

also teaches, in considering the relevant factors, an ALJ is under no obligation to conduct an "exhaustive factor-by-factor analysis" of the treating physician rule before deciding on a determination of weight. Stated differently, what is required is that the decision must be "sufficiently specific to make clear the weight given to the opinion and the reasons for that weight."[33]

Here, because the ALJ stated the weight to be assigned and articulated multiple reasons for that assignment, there is no basis for a remand as regards any asserted failure to otherwise strictly follow the treating source/good reasons rubric.

As concerns the articulated reasons,  although Kutsick appears to argue that the ALJ ignored or failed to appreciate the fact that Dr. Diab had treated her for over a year, the ALJ specifically found that his weight assignment was "despite the treating relationship between Dr. Diab and [Kutsick]."[34]  Further, although Dr. Diab may have been the only treating source to offer a functional capacity opinion as to Kutsick's physical limitations,[35] there were additional functional capacity opinions offered by two consulting state examiners which the ALJ discussed and evaluated, and to which the ALJ assigned "some weight."[36]

More importantly, contrary to Kutsick's contention that nothing in the record contradicts Dr. Diab's findings regarding physical limitations,[37] the ALJ discussed the

---

[33] *Id*. at 558 (internal citations omitted).

[34] Tr. at 22.

[35] ECF # 10 at 12.

[36] Tr. at 21.

[37] ECF # 10 at 15.

contradictory evidence at multiple places in the opinion.  As a preliminary matter, I note that the ALJ at Step Two did find that Kutsick had severe impairments in her "Chrone's [*sic*] disease, ankylosing spondylitis, fibromyalgia, lumbar facet arthropathy, degenerative disc disease of the lumbar spine ... bursitis in the shoulders bilaterally [and] inflammatory arthritis."[38]  And the ALJ took note of Kutsick's testimony at the hearing that "she struggles to hold objects for a prolonged periods due to pain and weakness in her hand, arms and shoulders."[39]

But the ALJ found little objective evidence to support Kutsick's testimony as to the level of severity of these symptoms, particularly as to the degree of disability she alleges with "handling, fingering and reaching."[40]  In support of that conclusion, the ALJ stated that "the record does not reflect proper trigger point testing to fully support the diagnosis of fibromyalgia"[41] and further noted Kutsick has "responded quite favorably to Remicade to treat her pain, *often reporting significant improvement in functioning* and overall pain levels subsequent to taking that medication."[42]  Further, he notes that Kutsick "has oftentimes

_____

[38] Tr. at 15.

[39] *Id*. at 19.

[40] *Id.*

[41] *Id*.

[42] *Id*. (emphasis added)(citing record).

-10-

denied any weakness in the arms and oftentimes presents with full muscle strength in the upper extremities."[43]

Thus, the ALJ concluded that "such signs of normal functioning fail to indicate an individual who is unable to reach in most any direction, or unable to handle, grasp or finger objects on a sustained basis, as [Kutsick] testified at the hearing."[44] And while the ALJ recognized that because there is a general fatigue associated with fibromyalgia, as well as some pain associated with inflammatory arthritis, he nonetheless concluded that "the absence of trigger point analysis and the signs of normal upper extremity functioning" support the RFC finding that Kutsick "can frequently, but not constantly, perform fine and gross manipulation (fingering and handling) bilaterally."[45]

Moving from upper extremity functioning, the ALJ then addressed how Kutsick's lower back condition affects her ability to stand and walk for prolonged periods. Similarly to the above discussion, the ALJ found that "the evidence of record fails to reflect a degree of objective impairment" consistent with Kutsick's claims.[46]

To that point, the ALJ specifically discussed an April 19, 2012 MRI of Kutsick's lumbar spine that showed:

---

[43] *Id*. (citing record).

[44] Id. at 19-20 (citing record).

[45] *Id*. at 20.

[46] *Id*.

- "only some mild facet degeneration at L 4-5, and moderate facet degenerative changes at L5-S1,"

- "no significant central canal stenosis,"

- "no significant neural foraminal narrowing,"and

- "no nerve impingement in the lumbar spine."[47]

Thus, the ALJ determined, this "MRI fails to show findings consistent with allegations of marked struggles with standing and walking."[48]

In addition to this objective evidence, the ALJ examined other "clinical signs" that "have failed to suggest more than some mild to moderate complications of lower back pain."[49]  The ALJ detailed those other clinical signs as:

- Kutsick presenting "on multiple occasions" with "normal gait," which indicated that she can "stand and walk without acute compromise,"

- Kutsick "has not shown any diminished muscle strength in the lower extremities," which, the ALJ found, was further evidentiary support for concluding that she can stand and walk for a combined two hours in an eight-hour workday, and

- Kutsick "has responded quite favorably to facet branch nerve blocks, reporting a complete cessation of lower back pain for five months after such injections."[50]

---

[47] *Id*. (citing record).

[48] *Id*.

[49] *Id*.

[50] *Id.* (citing record).

-12-

Upon considering the evidence of the 2012 MRI, the clinical notes on Kutsick's normal gait and undiminished muscle strength in the lower extremities, as well as evidence that she was totally free of lower back pain for five months after receiving nerve block injections, the ALJ found that this evidence supported an RFC finding that she could perform a sedentary job on a sustained basis.[51]

After having reviewed the evidence concerning the limitations on her upper and lower extremities, the ALJ then proceeded to analyze the objective evidence as it relates to her ongoing abdominal pain and diarrhea as the result of her Crohn's disease.[52]  In that regard, the ALJ notes that a July 1, 2013 colonoscopy "unequivocally showed no evidence of active Crohn's disease."[53] Thus, while conceding that Kutsick may still experience some abdominal pain from the past history, the ALJ concluded that "the increasingly minimal to now absent nature of active Crohn's disease makes it difficult to give significant weight to [Kutsick's] allegations of chronic abdominal pain and diarrhea."[54]  Further, the ALJ determined that because of this evidence, there was no need in the RFC for unscheduled restroom breaks or a workstation near a restroom since there was no evidence of chronic diarrhea.[55]  As such,

---

[51] *Id.*

[52] The opinion here consistently mis-spells this impairment as either "Chrone's" (*id.* at 15) or "Chron's" (*id.* at 20). I now render it with the correct spelling.

[53] *Id.* at 20.

[54] *Id.* at 20-21.

[55] *Id.* at 21.

the ALJ stated, an RFC for sedentary work that involves sitting for six out of eight hours per day "should leave [Kutsick] fairly comfortable throughout the workday and avoid exacerbations of abdominal issues."[56]

Next, the ALJ considered the physical functional limitation opinions of Dr. Torello and Dr. Klyop, the state agency consulting examiners.[57] The ALJ first gave "little weight" to these opinions as to the amount of weight Kutsick could lift, citing in this regard "the various comorbidities [Kutsick] appears to be dealing with on a daily basis,"[58] But then the ALJ found that the remainder of these opinions was consistent with the objective evidence, recounted above, that "poorly supports the claimant's alleged restrictions in the usage of her hands, the MRI findings concerning her lumbar spine [that] fail to show any acute impairment therein, and the colonoscopy findings [that] have shown her Crohn's disease to be improving with time and treatment."[59]

Only after this detailed review of Kutsick's own testimony, the objective clinical evidence concerning her upper extremities, her lower extremities and her abdominal issues, as well as considering the physical function capacity opinions of two separate examining consultants, does the ALJ then address the opinion of Dr. Diab. Here, the ALJ's stated reasons for discounting that opinion were that it is "largely inconsistent" with the evidence

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

-14-

discussed earlier, as well as the fact that Kutsuick's diagnoses of fibromyalgia, inflammatory arthritis and shoulder bursitis was "poorly documented," as reflected in the observation that no trigger point testing had been done as regards the fibromyalgia.[60]

In reviewing these reasons, I find that they are well-supported by detailed examinations of objective clinical findings, and are thoroughly explained in multiple places in the ALJ's opinion. Thus, the decision to accord only little weight to Dr. Diab's opinion is supported by substantial evidence, and so the RFC, which did not fully incorporate his views, is likewise not erroneous in its findings.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner denying benefits to Jennifer A. Kutsick is supported by substantial evidence, and the same is hereby affirmed.

IT IS SO ORDERED.

Dated: January 31, 2017                    s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

---

[60] *Id.* at 21-22.